USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/2/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GULL KEYS I LLC,

          Plaintiff,

-against-

FULTON ADVISORY BEEF FUND I, LLC,
FULTON ADVISORY GROUP, LLC,
BLAKE ADAMS, WENDELL THUSS, and
AGEX INC.,

          Defendants.

1:23-cv-09058-MKV

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION TO PARTIALLY DISMISS AMENDED COMPLAINT**

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff Gull Keys I LLC ("Plaintiff") brings this action alleging breach of three contracts it entered with Defendants Fulton Advisory Beef Fund I, LLC, AGEX Inc., Blake Adams, and Wendell Thuss (together, "Defendants").[1] Defendants move to partially dismiss the sole cause of action against individual Defendants Mr. Adams and Mr. Thuss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, the motion to partially dismiss is GRANTED in part and DENIED in part.

**FACTUAL BACKGROUND**[2]

Defendant AGEX Inc. ("AGEX") operates an exchange that facilitates transactions between buyers and sellers of livestock. SAC ¶ 21. AGEX finances livestock purchases by

---

[1] Plaintiff voluntarily dismissed without prejudice claims asserted against Fulton Advisory Group LLC that was initially named as a defendant.

[2] The facts are drawn from the operative Amended Complaint [ECF No. 41 ("AC" or the "Amended Complaint")], which are accepted as true and construed in the light most favorable to Plaintiff for purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 458 (2d Cir. 2019). The Court also considers "documents attached to the complaint as an exhibit or incorporated in it by reference." *Chambers v. Time Warner. Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (quoting *Brass v. American Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)). Here, Plaintiff's Amended Complaint attaches several contracts between the parties that are

extending short-term loans to buyers ("Obligors"), on which AGEX earns a commission. SAC ¶ 22. AGEX and Defendant Fulton Advisory Beef Fund I, LLC ("Fulton") entered into an agreement by which Fulton would purchase from AGEX receivables ("Receivables") due from Obligors that AGEX had originated, on which Fulton would retain a portion of AGEX's commission. SAC ¶ 23. Subsequently, Plaintiff entered into an agreement, titled the Framework Agreement ("Framework Agreement"), with Fulton and AGEX, pursuant to which Plaintiff would purchase from Fulton receivables that Fulton had purchased from AGEX. SAC ¶¶ 24–25; *see* Framework Agreement. Fulton and AGEX have certain responsibilities under the Framework Agreement, including causing Obligors to pay Receivables, providing information to Plaintiff on the creditworthiness of Obligors, removing Obligors related to non-performing Receivables from a list of eligible Obligors, and paying all amounts collected on Receivables to an account (the "Collection Account") for the benefit of Plaintiff. SAC ¶¶ 27, 48, 57; *see, e.g.*, Framework Agreement §§ 2.1, 2.6.

Plaintiff and Fulton separately entered into a Put Option Agreement. SAC ¶ 40; *see* Put Option Agreement. Pursuant to the Put Option Agreement, Fulton granted Plaintiff an irrevocable right to sell back to Fulton Plaintiff's ownership interest in any Receivables that had become non-performing. SAC ¶ 41.

Finally, Plaintiff entered into an Indemnity Guaranty with individual Defendants Messrs. Adams and Thuss, which guaranteed Fulton's and AGEX's obligations to Plaintiff under the Framework Agreement. SAC ¶ 42. The Indemnity Guaranty requires Adams and Thuss to pay the obligations of AGEX and Fulton under the Framework Agreement "following the occurrence

---

integral to and incorporated by reference in the Amended Complaint. [*See* ECF Nos. 41-1 ("Framework Agreement"), 41-2 ("Put Option Agreement"), 41-3 ("Indemnity Guaranty")].

of any of" certain specified events.  SAC ¶¶ 43–44; Indemnity Guaranty § 1.2(a).  These events include, among others, "[a]ny acts of fraud, misappropriation or misapplication of funds or proceeds of any Collateral[3] by" Defendants and "[t]he misapplication or conversion by" Defendants of "any proceeds of or payments made on or related to any Receivable sold to [Plaintiff] under the Framework Agreement."  SAC ¶ 44; Indemnity Guaranty §§ 1.2(a)(ii), (vi).

Plaintiff purchased twenty-five AGEX Receivables from Fulton.  SAC ¶¶ 4, 46.  Plaintiff alleges that shortly thereafter, Fulton and AGEX breached the Framework Agreement and the Put Option Agreement in various ways, including by failing to pay over to the Collection Account funds collected from Obligors on the Receivables.  SAC ¶¶ 51–56; *see also* SAC ¶¶ 46–50 (alleging breach of the Framework Agreement's provision for exclusive dealing), ¶¶ 60–65 (alleging breach of the Put Option Agreement).

Plaintiffs allege that Defendants' actions in breach of the Framework Agreement triggered the Indemnity Guaranty under four separate triggering conditions precedent provided for in that contract: (1) "acts of fraud" related to Collateral; (2) "misappropriation . . . of funds or proceeds of any Collateral"; (3) "misapplication . . . of any proceeds of or payments made on or related to any Receivable"; and (4) "conversion . . . of any proceeds of or payments made on or related to any Receivable."  SAC ¶ 67, 69–70; *see also* SAC ¶ 44; Indemnity Guaranty §§ 1.2(a)(ii), (vi).  As relevant here, with respect to "fraud," Plaintiff alleges that "AGEX and Fulton falsely stated to [Plaintiff] that they would cause the collected funds to be transferred into the Collection Account, false statements on which AGEX and Fulton intended [Plaintiff] to rely, which [Plaintiff] did."

---

[3] "Collateral" is defined by the Framework Agreement as "all collateral and/or security granted and/or securities pledged to [Plaintiff]," "including, without limitation, the items described in Section 2.10(a) of" the Framework Agreement.  Framework Agreement § 1.1.  As further defined in Section 2.10(a) of the Framework Agreement, collateral refers to "[Fulton's] property and assets" in which Plaintiff is granted a security interest, including tangible and intangible property related to Receivables.  Framework Agreement § 2.10(a).

3

SAC ¶ 67; *see also* SAC ¶ 89.  Plaintiff further alleges that all Defendants knew that AGEX and Fulton "did not intend to fully comply with the terms of the Framework Agreement."  SAC ¶ 66.  With respect to "conversion," Plaintiff alleges that it had a superior right to payments from the Collection Account under the waterfall provisions of the Framework Agreement, and that AGEX's and Fulton's failure to pay funds into the Collection Account, and improper deductions from funds that were actually transferred to the Collection Account, were "conversion of payments made on or related to any Receivable."  SAC ¶¶ 68–70; *see also* SAC ¶¶ 90–91.  Plaintiff additionally alleges, upon information and belief, that "AGEX and Fulton used the funds that were supposed to be paid to [Plaintiff] to instead pay other financers, creditors or third-party lenders outside of the Framework Agreement's fundings structure."  SAC ¶ 56.

Plaintiff made a demand on each of Mr. Adams and Mr. Thuss for satisfaction of his obligations under the Indemnity Guaranty, but neither Mr. Adams nor Mr. Thuss paid any portion of the Guaranty.  SAC ¶ 71.  Thus, Plaintiff alleges that Mr. Adams and Mr. Thuss breached the Indemnity Guaranty.  SAC ¶¶ 86–94.

## PROCEDURAL HISTORY

Plaintiff initiated this action, invoking the Court's diversity jurisdiction, by filing a complaint.  [ECF No. 2].  Pursuant to this Court's Individual Rules of Practice in Civil Cases, Defendants filed a pre-motion letter requesting leave to move to dismiss the initial complaint.  [ECF No. 20].  Plaintiff filed a letter in opposition.  [ECF No. 21].  The Court granted Defendants leave to file a motion to dismiss and permitted Plaintiff to seek leave to file an amended complaint curing the deficiencies raised in Defendants' pre-motion letter.  The Court cautioned that it would "not grant leave to amend later based on arguments in Defendants' pre-motion letter."  [ECF No. 22].  Plaintiff sought leave to amend its complaint [ECF No. 23], which the Court granted.  [ECF

4

No. 24]. Plaintiff filed an Amended Complaint ("AC") and Defendants moved to partially dismiss the Amended Complaint. [ECF Nos. 27 & 30].

The Amended Complaint did not state the citizenship of the members or parent corporations of Plaintiff, an LLC, or the Defendant LLC, Fulton Advisory Beef Fund I, LLC. AC ¶¶ 13, 15. Accordingly, the Court issued an order which denied the motion to dismiss without prejudice to renewal and directed Plaintiff to show cause why the case should not be dismissed for lack of subject matter jurisdiction. [ECF No. 34]. With leave of the Court, Plaintiff filed a Second Amended Complaint and adequately alleged diversity jurisdiction. [ECF No. 41].[4] In response to the Court's Order to Show Cause regarding the existence of subject matter jurisdiction, Plaintiff voluntarily dismissed without prejudice Defendant Fulton Advisory Group LLC. [ECF No. 39].

Defendants now move to partially dismiss the Second Amended Complaint. [ECF No. 48].[5] Specifically, Defendants move to dismiss certain allegations supporting Plaintiff's third cause of action (the "Third Cause of Action") against Messrs. Adams and Thuss for breach of the Indemnity Guaranty. *See* SAC ¶¶ 86–94. While Defendants concede that Plaintiff has adequately

---

[4] The citizenship of a limited liability company ("LLC") depends on the citizenship of its members. *See, e.g., Bayerische Landesbank, New York Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012). If any of the members of the LLC are themselves LLCs, partnerships, or other unincorporated entities, Plaintiff must the identity and citizenship of their members or partners. *See, e.g., Avant Cap. Partners, LLC v. W108 Dev. LLC*, 387 F. Supp. 3d 320, 322 (S.D.N.Y. 2016).

Plaintiff is an LLC and its complicated membership including several limited partnerships and LLCs includes entities and individuals with citizenship in Delaware and Connecticut. SAC ¶ 13. Defendant AGEX is a corporation organized and existing under the laws of Texas and with a principal place of business in Texas. *Id.* ¶ 14. Defendants Blake Adams and Wendell Thuss are individuals who reside in Texas. *Id.* ¶¶ 16–17. Defendant Fulton Advisory Beef Fund I, LLC is an LLC with a sole parent company named Fulton Advisory Group, LLC, another Texas limited liability company. *Id.* ¶ 15. The sole parent company of Fulton Advisory Group, LLC is AGEX Trade, LLC, a Texas limited liability company and AGEX Trade, LLC is wholly owned by AGEX, a Texas corporation. *Id.*; *see also One Commc'ns Corp. v. Sprint Nextel Corp.*, 495 F. Supp. 2d 219, 224 (D. Mass. 2007) (collecting cases holding that an LLC wholly owned by corporation shares the citizenship of its parent company).

[5] Defendants filed a memorandum of law in support of their motion to dismiss. [ECF No. 48 ("Def. Mem.")]. Plaintiff opposed. [ECF No. 51 ("Pl. Mem.")]. Defendants filed a reply in further support of their motion. [ECF No. 53 ("Def. Reply")].

5

alleged that AGEX and Fulton "misappropriat[ed]" or "misappli[ed]" payments related to Receivables, triggering liability of Adams and Thuss under the Indemnity Guaranty, Defendants argue that Plaintiff has not adequately alleged that Defendants engaged in "fraud" or "conversion" sufficient to satisfy those conditions precedent of the Indemnity Guaranty. *See id.* In essence, Defendants seek to preclude two of the four theories on which Plaintiff bases its claim for breach of the Indemnity Guaranty. *See* Def. Mem. 19–20.

## LEGAL STANDARDS

### I.  Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While the Court "must accept as true all of the allegations contained in a complaint," this "tenet . . . is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[O]n a motion to dismiss, a court may consider 'documents attached to the complaint as an exhibit or incorporated in it by reference.'" *Chambers*, 282 F.3d at 152–53 (quoting *Brass*, 987 F.2d at 150).

### II.  Breach of Contract

To state a claim for breach of contract under New York law[6], "the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir.

---

[6] The Indemnity Guaranty is governed by New York law. *See* Indemnity Guaranty § 4.3.

6

2015) (quoting *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011)); *see 34-06 73, LLC v. Seneca Ins. Co.*, 39 N.Y.3d 44, 52, 198 N.E.3d 1282, 1287 (2022).

"Under New York law, . . . a condition precedent is 'an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises.'" *Bank of N.Y. Mellon Tr. Co. v. Morgan Stanley Mortg. Capital, Inc.*, 821 F.3d 297, 305 (2d Cir. 2016) (quoting *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685, 690, 660 N.E.2d 415, 418 (1995)). "Conditions precedent must be literally observed when a contract's language unmistakably expresses them." *Karmilowicz v. Hartford Fin. Servs. Grp.*, No. 11 CIV. 539 CM DCF, 2011 WL 2936013, at *10 (S.D.N.Y. July 14, 2011), *aff'd sub nom. Karmilowicz v. Hartford Fin. Servs. Grp., Inc.*, 494 F. App'x 153 (2d Cir. 2012). Thus, "[w]hen commercial parties expressly agree that a specified occurrence shall be a condition precedent to the creation or enforceability of a right or obligation, and there is no ambiguity arising out of other language in their contract, the only question for the court is whether the condition precedent has been complied with." *David Fanarof, Inc. v. Dember Const. Corp.*, 195 A.D.2d 346, 348, 600 N.Y.S.2d 226, 227–28 (1st Dep't 1993). "Where a plaintiff has not alleged satisfaction of a valid condition precedent, plaintiff 'fail[s] to state a claim for breach of contract,' and a motion to dismiss must be granted." *Comerica Leasing Corp. v. Bombardier Inc.*, No. 16 CIV. 614 (PGG), 2019 WL 11027701, at *6 (S.D.N.Y. Sept. 30, 2019) (quoting *CVC Claims Litig. LLC v. Citicorp Venture Cap. Ltd.*, No. 03 CIV. 7936 (DAB), 2006 WL 1379596, at *4 (S.D.N.Y. May 18, 2006)); *see also* 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1235 (4th ed. 2024) ("If the applicable law makes the performance or occurrence of conditions

precedent an element of the contract claim, then such an allegation must be included in the complaint.").

## DISCUSSION

Defendants do not dispute that Plaintiff has stated a claim for breach of the Indemnity Guaranty, because Defendants concede that Plaintiff has adequately alleged "misapplication" or "misappropriation" of payments related to Receivables by AGEX and Fulton, two of the four triggering conditions precedent on which Plaintiff bases its claim for breach of the Indemnity Guaranty. *See* Def. Mem. 19. However, Defendants argue that Plaintiff fails to adequately allege satisfaction of the conditions precedent for "fraud" or "conversion," and that Plaintiff's claim for breach of the Indemnity Guaranty must be dismissed to the extent they are grounded on these predicate bases. Def. Mem. 9–20; *see, e.g.*, *Performing Arts Ctr. of Suffolk Cnty. v. Actor's Equity Ass'n*, No. CV 20-2531 (JS)(AYS), 2022 WL 16755284, at *14 (E.D.N.Y. Aug. 25, 2022) (partially dismissing cause of action under Rule 12(b)(6) to the extent it was based on a particular legal theory), *report and recommendation adopted*, No. 20-CV-2531(JS)(AYS), 2022 WL 4977112 (E.D.N.Y. Sept. 30, 2022); *Pac. Life Ins. Co. v. US Bank Nat'l Ass'n*, 636 F. Supp. 3d 366, 441 (S.D.N.Y. 2022) (same).[7]

### I. Plaintiff Fails to Adequately Allege Satisfaction of the Condition Precedent for "Fraud"

Defendants principally argue that Plaintiff fails to plead satisfaction of the Indemnity Guaranty's condition precedent of "fraud . . . [related to] Collateral" because Plaintiff fails to satisfy the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure.

---

[7] Plaintiff argues that the pending motion to dismiss should be construed as a motion to strike pursuant to Federal Rule of Civil Procedure 12(f). Pl. Mem. 2–3. However, as Defendants explain, they do not seek to strike Plaintiff's fraud and conversion allegations redundant, immaterial, impertinent, or scandalous, the bases for striking permitted by Rule 12(f). Def. Mem. 3.

See Def. Mem. 9–11. Plaintiff argues, in opposition, that Rule 9(b)'s pleading standard is inapplicable because Plaintiff does not allege an independent fraud claim, and that the Amended Complaint's allegations of fraud satisfy the "general averment" pleading requirement of Rule 9(c) as to the satisfaction of conditions precedent. See Pl. Mem. 3–6. Plaintiff's arguments ignore both Second Circuit precedent and the weight of authority in this District as to the application of Rules 9(b) and (c). The Court finds, under the application of the correct legal standards, that the Amended Complaint fails to allege fraud as a trigger for Messrs. Adams and Thus's liability under the Indemnity Guaranty.

A.     Rule 9(b) Applies to All Allegations of Fraud

Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Defendants argue that Plaintiff's allegations of satisfaction of the "fraud" condition precedent fail to meet this heightened pleading standard. See Def. Mem. 9–11; Def. Reply 6–7. Plaintiff argues that Rule 9(b) does not apply because Plaintiff has not pleaded a standalone fraud claim, but rather "fraud" as a triggering event for Mr. Adams's and Mr. Thuss's liability under the Indemnity Guaranty. Plaintiff argues that Defendants improperly seek to impose Rule 9(b)'s standard on a "claim-within-a claim," and that their allegations suffice under the pleading standard of Rule 9(c).[8] Pl. Mem. 3–4.

In support of its argument, Plaintiff cites a single case from the District of Kansas holding that Rule 9(b) did not apply to defendants' counterclaim and affirmative defenses that were "based

---

[8] The Court need not reach Plaintiff's Rule 9(c) argument with respect to Plaintiff's fraud allegations because it finds that Rule 9(b)'s more stringent pleading standard applies. However, the Court notes that Plaintiff's argument relies on an outdated view of Rule 9(c) in this District. Rule 9(c) provides that "[i]n pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed." Fed. R. Civ. P. 9(c). Plaintiff cites authority stating that "a general averment of performance [of a condition precedent] is sufficient to withstand a motion to dismiss." *Ackerley Media Grp., Inc. v. Sharp Elecs. Corp.*, 170 F. Supp. 2d 445, 453 (S.D.N.Y. 2001); see Pl. Mem. 5. The Second Circuit "ha[s] not interpreted Rule 9(c) since the Supreme Court's adoption of the plausibility pleading standard" in *Twombly* and *Iqbal*, *Zam & Zam Super Mkt., LLC v. Ignite Payments, LLC*, 736 F. App'x 274, 276 (2d Cir. 2018), which Plaintiff's cited authority pre-dates. However, *Twombly* and *Iqbal* "ha[ve] been applied to

9

upon fraud," because "defendants concede[d] they are not alleging that [plaintiff] 'committed fraud.'" *Unicredit Bank AG v. RKC Fin. Corp.*, No. 13-2311-SAC, 2014 WL 2916749, at *10 (D. Kan. June 26, 2014); *see* Pl. Mem. 3–4. The Court is not persuaded by this out-of-Circuit decision, and it is inconsistent with Second Circuit precedent that does bind this Court.

In *Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004), the Second Circuit considered "whether the heightened pleading standard of Rule 9(b) . . . applies to claims brought under Section 11 and Section 12(a)(2) of the Securities Act." *Id.* at 167. Section 11 of the Securities Act establishes liability for the dissemination of a registration statement that "contain[s] an untrue statement of a material fact or omit[s] to state a material fact . . . necessary to make the statements therein not misleading." 15 U.S.C. § 77k. Section 12(a)(2) of the Securities Act provides that "a person who sells securities by means of a prospectus that misrepresents or omits material facts is liable to the person purchasing such security from him." *Rombach*, 355 F.3d at 168 n.3 (citing 15 U.S.C. § 77l(a)(2)). Section 11 and Section 12(a)(2) claims are not independent fraud claims, and they may sound in either fraud or negligence. *See id.* at 170–71.

The Second Circuit held "that the heightened pleading standard of Rule 9(b) applies to Section 11 and Section 12(a)(2) claims insofar as the claims are premised on allegations of fraud." *Rombach*, 355 F.3d at 171. The court reasoned that "[b]y its terms," the text of the version of Rule

---

require specificity with respect to other provisions of Rule 9." *Id.* Recently, multiple courts in this District have so held with respect to Rule 9(c), too, requiring that "occurrence or performance of a condition precedent—to the extent that it need be pled as a required element of a given claim—must be plausibly alleged in accordance with Rule 8(a)['s]" plausibility standard articulated in *Twombly* and *Iqbal*. *Dervan v. Gordian Grp. LLC*, No. 16-CV-1694 (AJN), 2017 WL 819494, at *6 (S.D.N.Y. Feb. 28, 2017) (Nathan, J.); *see Boustead Sec., LLC v. Leaping Grp. Co.*, No. 20-CV-3749 (VEC), 2021 WL 3774116, at *4 (S.D.N.Y. Aug. 25, 2021); *Comerica*, 2019 WL 11027701, at *8; *O.F.I. Imports Inc. v. Gen. Elec. Cap. Corp.*, No. 15-CV-7231 (VEC), 2017 WL 3084901, at *5 (S.D.N.Y. July 20, 2017); Def. Reply 4–6; *see also Zam & Zam*, 736 F. App'x at 276 (citing *Dervan*, 2017 WL 819494, at *4–*6, but declining to resolve the issue because it was raised for the first time on appeal). Consistent with these authorities, "[i]n pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed,' Fed. R. Civ. P. 9(c), but a party must allege sufficient facts to render those allegations plausible." *Northwell Health, Inc. v. Illinois Union Ins. Co.*, No. 20-CV-6893-LTS-OTW, 2022 WL 912929, at *7 (S.D.N.Y. Mar. 29, 2022) (citing *Dervan*, 2017 WL 819494, at *6).

10

9(b) in effect at the time of the case "applies to 'all averments of fraud.'" *Id.* (quoting Fed. R. Civ. P. 9(b) (1997)). The Rule's "wording is cast in terms of the conduct alleged, and is not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action." *Id.* Although—as in the case of Plaintiff's claim for breach of the Indemnity Guaranty here—"[f]raud is not an element or a requisite to a claim under Section 11 or Section 12(a)(2) . . . , claims under those sections may be—and often are—predicated on fraud." *Id.* The Second Circuit found that "Section 11 and Section 12(a)(2)[] claims that *do* rely upon averments of fraud are subject to the test of Rule 9(b)." *Id.* (emphasis added). Consistent with this decision, other Courts of Appeals have noted that "[f]raud allegations may damage a defendant's reputation *regardless of the cause of action in which they appear*, and they are therefore properly subject to Rule 9(b) in every case." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1104 (9th Cir. 2003) (emphasis added).

The text of Rule 9(b) was amended in 2007 such that it no longer explicitly applies to "all averments of fraud." *See* Fed. R. Civ. P. 9(b). However, the Advisory Committee Notes to the 2007 Amendment specifically state that the revision was "intended to be stylistic only." Fed. R. Civ. P. 9(b), Advisory Committee Notes, 2007 Amendment. Accordingly, courts in this District have continued to apply *Rombach*'s reasoning that Rule 9(b) applies to all "claims insofar as the claims are premised on allegations of fraud," notwithstanding the change in the Rule's language. *Homeward Residential, Inc. v. Sand Canyon Corp.*, 298 F.R.D. 116, 124 & n.4 (S.D.N.Y. 2014) (quoting *Rombach*, 355 F.3d at 171); *see also In re E-House Sec. Litig.*, No. 20 CIV. 2943 (ER), 2021 WL 4461777, at *9 (S.D.N.Y. Sept. 29, 2021) ("[Rule 9(b)'s] requirements apply whenever a plaintiff alleges fraudulent conduct, regardless of whether fraudulent intent is an element of a claim." (citing *Rombach*, 355 F.3d at 170–71)), *aff'd sub nom. Maso Cap. Invs. Ltd. v. E-House*

11

*(China) Holdings Ltd.*, No. 22-355, 2024 WL 2890968 (2d Cir. June 10, 2024). Indeed, courts have applied Rule 9(b)'s standard in substantially the same circumstances as those found in the present case. *See Citibank, N.A. v. Jacobsen*, No. 19-CV-959 (DAB) (JLC), 2020 WL 772497, at *6 (S.D.N.Y. Feb. 18, 2020) (finding that plaintiff did not "sufficiently allege[] the fraud-based trigger event" for a contract claim pleading breach of an indemnity guaranty under Rule 9(b)'s heightened standard), *report and recommendation adopted in relevant part*, No. 19 Civ. 959 (ER) (JLC), 2020 WL 1503229 (S.D.N.Y. Mar. 30, 2020).

Accordingly, under the Second Circuit's opinion in *Rombach* and the weight of authority in this District interpreting and applying that case, the Court finds that Rule 9(b)'s heightened pleading standard applies to Plaintiff's claim for breach of the Indemnity Guaranty to the extent that claim is premised on satisfaction of the "fraud" condition precedent contained in that agreement.

B.  Plaintiff Fails to Allege Defendants' Purported Fraud
    With Rule 9(b)'s Required Specificity

Applying Rule 9(b)'s standard to Plaintiff's allegations of the occurrence of the Indemnity Guaranty's condition precedent for "fraud," the Amended Complaint fails to allege fraud with the requisite particularity. The Second Circuit interprets Rule 9(b) to require that, for a complaint alleging fraud to survive a motion to dismiss, the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Stevelman v. Alias Rsch. Inc.*, 174 F.3d 79, 84 (2d Cir. 1999) (quoting *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 51 (2d Cir. 1995)); *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 25 (2d Cir. 2016); *see also U.S. ex rel. Kester v. Novartis Pharm. Corp.*, 23 F. Supp. 3d 242, 252 (S.D.N.Y. 2014) (holding

12

that a plaintiff must "set forth the who, what, when, where and how of the alleged fraud" to adequately plead fraud in federal court).

In the Amended Complaint, Plaintiff alleges that "[a]t the time the parties executed the Framework Agreement," Defendants "each knew that AGEX and Fulton did not intend to fully comply with the terms of the Framework Agreement with respect to the transfer of collected funds to the Collection Account." SAC ¶ 66. However, "AGEX and Fulton falsely stated to [Plaintiff] that they would cause the collected funds to be transferred into the Collection Account, false statements on which AGEX and Fulton intended [Plaintiff] to rely, which [Plaintiff] did." SAC ¶ 67; *see* Pl. Mem. 5–6; *see also* SAC ¶ 89.

Plaintiff's allegations allude, in the most general terms, to statements made by both AGEX and Fulton that were potentially fraudulent. But Plaintiff "has failed to specifically identify the time, place, [or] speaker, . . . of even one fraudulent statement," as Rule 9(b) requires. *See Schneider v. Pearson Educ., Inc.*, No. 12 CIV. 6392 JPO, 2013 WL 1386968, at *4 (S.D.N.Y. Apr. 5, 2013) (internal quotation marks omitted) (dismissing fraud claims); *see also Inspired Cap., LLC v. Conde Nast*, 803 F. App'x 436, 440 (2d Cir. 2020) (holding that plaintiff's allegation of "an alleged misstatement, at an unidentified location, on an unidentified date" "clearly does not satisfy [Rule 9(b)'s] standard" and affirming district court's dismissal of fraud claims without leave to amend); *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'"); *Travelex Currency Servs., Inc. v. Puente Enters., Inc.*, No. 18 CIV. 1736 (ER), 2019 WL 1259102, at *6 (S.D.N.Y. Mar. 19, 2019) (dismissing fraud claim where party failed to allege "where the promises . . . occurred; the form in which the promises were made (*e.g.*, whether such promises were oral or written); the general contours of the promises . . . ; to whom the

13

promises were made . . . ; or by whom the promises were made" and collecting cases dismissing fraud claims under similar circumstances).; *Negrete v. Citibank, N.A.*, 237 F. Supp. 3d 112, 122–23 (S.D.N.Y. 2017) (dismissing fraud claims where plaintiffs "fail[ed] to identify the alleged [Defendant] employees who made these allegedly fraudulent statements"), *aff'd*, 759 F. App'x 42 (2d Cir. 2019).  Although a plaintiff need not plead the details of fraudulent statements "with absolute precision," Plaintiff's allegations here do not provide enough information "to put [Defendants] on notice as to the circumstances of the charged misrepresentations."  *Performing Arts Ctr. of Suffolk Cnty.*, 2022 WL 16755284, at *15.  Moreover, a false promise to perform under the contract does not amount to fraud under New York law.  *See, e.g.*, *Sweet Baby Lightning Enters. LLC v. Keystone Cap. Corp.*, No. 21-CV-6528 (RA), 2023 WL 5334016, at *4 (S.D.N.Y. Aug. 18, 2023) (citing *Ithaca Cap. Invs. I S.A. v. Trump Panama Hotel Mgmt. LLC*, 450 F. Supp. 3d 358, 370 (S.D.N.Y. 2020) ("A party's mere promise to perform its contractual obligations, even if knowingly false at the time of making, is not enough to support a claim of fraud under New York law.")).

Accordingly, the Court finds that Plaintiff fails to adequately allege the occurrence of the condition precedent of "fraud . . . [in relation to] Collateral," Indemnity Guaranty § 1.2(a)(ii), as it must to sustain a New York state-law claim for breach of the Indemnity Guaranty premised on that triggering event.  *See Comerica*, 2019 WL 11027701, at *6.  Accordingly, the Court partially

dismisses the Third Cause of Action for breach of the Indemnity Guaranty to the extent that claim is based on Defendants' "acts of fraud related to collateral."[9] SAC ¶ 89.

## II.    Plaintiff Adequately Alleges Satisfaction of the Condition Precedent for "Conversion"

The Court is not persuaded by Defendants' argument that Plaintiff has failed to adequately allege satisfaction of the Indemnity Guaranty's condition precedent for "conversion . . . of payments made on or related to any Receivable." *See* Def. Mem. 17–19; Indemnity Guaranty § 1.2(a)(vi). Notably, Rule 9(b) does not apply to these allegations, and Plaintiff need only satisfy Rule 9(c)'s standard by "alleg[ing] sufficient facts to render [its] allegations" that the "condition[] precedent ha[s] occurred or been performed" "plausible." *Northwell Health*, 2022 WL 912929, at *7 (quoting Fed. R. Civ. P. 9(c)); *see supra* n.7.

The Indemnity Guaranty does not define "conversion" except insofar as stating that "conversion" may be "of . . . any proceeds of or payments made on or related to any Receivable" or "any insurance proceeds paid by reason of any loss, damage or destruction to the Collateral." Indemnity Guaranty § 1.2(a)(vi). Defendants cite no authority for the proposition that the term "conversion" as utilized in the Indemnity Guaranty must carry the legal definition, including all constituent elements, of a claim for conversion under New York law. This uncertainty, alone, is sufficient to deny Defendants' motion as to the Amended Complaint's conversion allegations. *See Metro-Goldwyn-Mayer Studios Inc. v. Canal+ Distribution S.A.S.*, No. 07 CIV. 2918 (DAB), 2010 WL 537583, at *8 (S.D.N.Y. Feb. 9, 2010) (finding defined term utilized in condition precedent to be "ambiguous as applied to the facts alleged in this case at this stage of the litigation" and

---

[9] Because the Court determines that partial dismissal is warranted based on Plaintiff's failure to meet Rule 9(b)'s specificity threshold, the Court does not consider Defendants' remaining arguments as to the deficiencies of Plaintiff's fraud allegations. *See* Def. Mem. 11–17.

15

concluding that "[t]he Court therefore has insufficient data to dismiss the Amended Complaint for failure to state a claim for breach of contract").

In any event, the Amended Complaint does indeed contain sufficient factual allegations to plausibly plead that the condition precedent of "conversion" occurred. Under New York law, conversion is defined as "the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403–04 (2d Cir.) (quoting *Vigilant Ins. Co. v. Hous. Auth.*, 87 N.Y.2d 36, 44, 637 N.Y.S.2d 342, 660 N.E.2d 1121 (1995)), *certified question answered*, 8 N.Y.3d 283, 864 N.E.2d 1272 (2007). Conversion includes "a 'denial or violation of the plaintiff's dominion, rights, or possession' over her property" and requires "that the defendant exclude the owner from exercising her rights over the goods." *Id.* at 404 (quoting *Sporn v. MCA Recs., Inc.*, 58 N.Y.2d 482, 487, 448 N.E.2d 1324, 1326 (1983) and citing *New York v. Seventh Regiment Fund, Inc.*, 98 N.Y.2d 249, 259, 746 N.Y.S.2d 637, 774 N.E.2d 702 (2002)).

Plaintiff alleges that it had a "superior right" to funds collected from Obligors, and that "AGEX's and Fulton's failure to pay the collected funds into the Collection Account was a . . . conversion of payments made on or related to any Receivable." SAC ¶ 69; *see also* SAC ¶¶ 90–91. This allegation, standing alone, might constitute a "[t]hreadbare recital[]" of satisfaction of the condition precedent, "supported by mere conclusory statements," which would not suffice. *Iqbal*, 556 U.S. at 678. However, elsewhere in the Amended Complaint, Plaintiff alleges that "[u]pon information and belief, AGEX and Fulton used the funds that were supposed to be paid to [Plaintiff] to instead pay other financers, creditors or third-party lenders outside of the Framework Agreement's fundings structure." SAC ¶ 56. In other words, Plaintiff alleges that funds that AGEX and Fulton collected on Receivables, to which Plaintiff was entitled under the Framework

16

Agreement, were used by AGEX and Fulton to pay unrelated debts. Thus, this excluded Plaintiff from exercising its purported contractual rights over the collected amounts.

The Court finds that at this stage of the proceedings this allegation is sufficient to plead the occurrence of the condition precedent in the Indemnity Guaranty of "conversion"—an ambiguous, undefined term. Accordingly, the Court denies Defendants' motion to dismiss the Third Cause of Action for breach of the Indemnity Guaranty to the extent that claim is based on Defendants' alleged "conversion of payments made on or related to any Receivable sold to [Plaintiff] under the Framework Agreement." SAC ¶¶ 90–91.

## CONCLUSION

For the foregoing reasons, Defendants' motion to partially dismiss the Amended Complaint is GRANTED in part and DENIED in part. Specifically, (1) Defendants' motion to partially dismiss the Third Cause of Action, to the extent that cause of action is premised on the occurrence of the condition precedent of "fraud," is GRANTED without leave to amend[10] and (2) Defendants' motion to partially dismiss the Third Cause of Action, to the extent that cause of action is premised on the occurrence of the condition precedent of "conversion," is DENIED. The Clerk of Court is respectfully requested to terminate the motion pending at docket entry 48.

**SO ORDERED.**

**Date: September 2, 2025**　　　　　　　　　　　　　**MARY KAY VYSKOCIL**
**      New York, NY**　　　　　　　　　　　　　　　**United States District Judge**

---

[10] The Court declines to grant Plaintiff leave to amend the Third Cause of Action. In its order permitting Plaintiff to file the Amended Complaint, the Court cautioned that it would "not grant leave to amend later based on arguments in Defendants' pre-motion letter." [ECF No. 22]. Moreover, Plaintiff has not requested leave to amend, and "[a] plaintiff need not be given leave to amend if it fails to specify . . . to the district court . . . how amendment would cure the pleading deficiencies in its complaint." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (affirming denial of leave to amend where plaintiff "failed to resolve its pleading deficiencies in its First Amended Complaint" and "failed to specify how it could cure its pleading deficiencies" in a further amendment).